JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER ANDERSON, an individual; CHAKA THEUS, an individual; RONALD LATHROP, an individual; ANITRA HALL, an individual; BRIAN FELSEN, an individual; and ARASH MAGHBOULEH, an individual, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>    v.<br><br>UNITED PARCEL SERVICE OF AMERICA, INC., a corporation; UNITED PARCEL SERVICE, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>  Defendants. | No. 2:24-cv-00096-DSF-SSC<br><br>Order GRANTING Plaintiffs' Motion to Remand (Dkt. 26) |

  Plaintiffs Amber Anderson, Chaka Theus, Ronald Lathrop, Anitra Hall, Brian Felson, and Arash Maghbouleh move for remand. Dkt. 26 (Mot.). Defendants United Parcel Service of America, Inc. and United Parcel Service, Inc. (collectively, UPS) oppose. Dkt. 29 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion to remand is GRANTED.

# I. Background

## A. Procedural History

On November 22, 2023, Plaintiffs filed this putative class action in Los Angeles Superior Court, alleging that UPS's Website Terms of Use contains a non-disparagement clause in violation of California Civil Code section 1670.8 (the Yelp Law). Dkt. 1-1 ¶ 25-28. UPS removed the case on January 5, 2024 under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). Dkt. 1 ¶ 2.

On March 13, 2024, UPS moved to dismiss Plaintiffs' complaint for failure to state a claim. Dkt. 15. On May 17, 2024, the Court granted UPS's motion to dismiss with leave to amend, ordering Plaintiffs to file an amended complaint by June 17, 2024. Dkt. 20 (Ord.). Plaintiffs timely filed a first amended complaint (FAC), dkt. 21, and on July 22, 2024, UPS moved to dismiss the FAC for failure to state a claim. On August 15, 2024, Plaintiffs moved for remand, arguing that the FAC does not assert that Plaintiffs have suffered an "injury in fact" as required to satisfy Article III standing requirements. Mot. at 4.

## B. Factual Allegations

Plaintiffs are six California residents who "visited and used [UPS's] website, ups.com, to complete at least one sales transaction with UPS, within the applicable limitations period . . . ." FAC ¶¶ 14-19. Plaintiffs allege that UPS's Website Terms of Use (Terms) provides that (1) "[b]y accessing or using the Site . . . [y]ou agree to use the Website . . . in a fashion that does not, in the sole judgment of UPS, negatively reflect on the goodwill or reputation of UPS" and (2) "UPS, in its sole discretion, may terminate or suspend [y]our use of the Website, the UPS Systems, Information, Services, and Content at any time and for any or no reason in its sole discretion . . . ." Id. ¶¶ 25-26. According to Plaintiffs, the Terms "forbid[ ] any California consumers, or potential California consumers, who have visited or used the Website, or are even considering purchasing services or products from UPS through its Website, from making any statements that would

2

purportedly 'negatively reflect on the goodwill or reputation' of UPS itself, any of its partners, any of its employees, any of its agents, or any of its goods or services." Id. ¶ 27.  Plaintiffs allege that UPS, through its Terms, "intentionally, willfully, or recklessly seek[s] to have Plaintiffs and the Class members waive their right as consumers to make statements regarding [UPS] or their employees, vendors, partners, agents, and goods or services" in violation of the Yelp Law. Id. ¶ 59.  Plaintiffs bring this claim as a putative class action on behalf of "all persons residing in California who visited or used the Websites to complete transactions with Defendants" during the fullest period allowed by law. Id. ¶ 31. Plaintiffs seek civil penalties under the Yelp Law and "restitutionary and injunctive relief, including public injunctive relief." Id. ¶¶ 62-63.

## II. Legal Standard

### A.   Remand

"It is axiomatic that federal courts are courts of limited jurisdiction" and "are limited, by Congress and by the Constitution, in the subject matter of cases we may adjudicate." Polo v. Innoventions Int'l, LLC, 833 F.3d 1193, 1195 (9th Cir. 2016) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  A defendant may remove an action to federal court if the federal court could have exercised original jurisdiction over the action. 28 U.S.C. § 1441(a).  CAFA gives federal courts jurisdiction over class actions involving at least 100 class members where there is minimal diversity and at least $5 million in controversy.  28 U.S.C. § 1332(d).

Although procedural defects in a notice of removal not raised in a timely motion to remand are waived, the same is not true for defects of subject matter jurisdiction. Polo, 833 F.3d at 1196.  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction," remand is mandatory.  28 U.S.C. § 1447(c).  "The rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as

3

well to a case removed pursuant to CAFA as to any other type of removed case." Polo, 833 F.3d at 1196 (citing 28 U.S.C. § 1447(c)(1)).

### B. Standing

Under Article III, the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." Id. (cleaned up). To satisfy the "'irreducible constitutional minimum' of standing[,] . . . [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016). "[T]he party invoking federal jurisdiction . . . bear[s] the burden of demonstrating that [it has] standing." TransUnion, 594 U.S. at 430-31.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Spokeo, 578 U.S. at 339 (cleaned up). "A concrete injury must be *de facto*; that is, it must actually exist." Id. at 340 (cleaned up). The injury must be "real" rather than merely "abstract." Id. "[A]n intangible harm may qualify as an injury in fact." Eichenberger v. ESPN, Inc., 876 F.3d 979, 982 (9th Cir. 2017) (citing Spokeo, 578 U.S. at 340). "Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Spokeo, 578 U.S. at 340-41. The injury in fact requirement is not "automatically satisfie[d] . . . whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Id. at 341.

4

## III. Discussion

### A. The Notice of Removal

Plaintiffs initially note that UPS failed to include in the notice of removal any "analysis regarding whether Plaintiffs' claims meet the standing requirements of Article III." Id. at 8. UPS describes this argument as "procedural" and "time barred[,]" Opp'n at 14, emphasizing that the instant motion is the first time Plaintiffs have raised the issue of subject matter jurisdiction, and pointing to statements by Plaintiffs' counsel before the Los Angeles Superior Court[1] and to one line in the FAC that UPS contends "affirmatively allege[s]" jurisdiction. Id. at 1-3. These arguments obfuscate the core issue—is there now an "actual case[ ] or controvers[y]" before the Court as required by the Constitution. See Spokeo, 578 U.S. at 337.

Even if a notice of removal is sufficient under the removal statute, the Court is "under an independent obligation to examine [its] own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." United States v. Hays, 515 U.S. 737, 742 (1995) (cleaned up). Standing is a constitutional minimum; the issue cannot be waived. See Polo, 833 F.3d at 1196. And, as "the party invoking federal jurisdiction," UPS "bear[s] the burden of demonstrating that [it has] standing." TransUnion, 594 U.S. at 430-31.

### B. Injury in Fact

Plaintiffs argue the Court does not have subject matter jurisdiction because their Yelp Law claim does not assert that they

---

[1] UPS requests that the Court take judicial notice of two documents from the action in Los Angeles Superior Court: (1) the parties' joint statement filed on April 16, 2024 and (2) the minute order dated April 23, 2024. Dkt. 29-1. Because issues of subject matter jurisdiction cannot be waived, see Polo, 833 F.3d at 1196, the Court's ruling would be the same even if it had taken judicial notice of the documents. Therefore, the request is moot.

5

have suffered an injury in fact that would satisfy Article III standing requirements.

### 1. Injuries Implicating Freedom of Speech

Plaintiffs argue that because the Yelp Law "seek[s] to protect consumers' speech rights," the Court should apply precedent regarding standing in free speech cases, which requires an "imminent threat of enforcement" to establish injury in fact. Mot. at 8.

Although "this case arises under California law, 'both history and legislative actions support the view that [the Yelp Law] concerns a free speech right that is analogous to, or has a close relationship with, rights traditionally protected under the First Amendment and the corresponding provisions in the California Constitution.'" O'Donnell v. Crocs Retail, LLC, No. 2:24-cv-02726-SVW-PD, 2024 WL 3834704, at *3 (C.D. Cal. Aug. 15, 2024) (quoting Sweeney v. Paramount Glob., No. 2:24-cv-00708-JAK-RAO, 2024 U.S. Dist. LEXIS 129148, at *9 (C.D. Cal. July 19, 2024)); see also Dkt. 27-2 at 4 (Maldonado Order) ("The Yelp Law concerns free speech rights that are analogous to rights traditionally protected under the First Amendment's speech clause, U.S. Const. Amend. I, and therefore the relaxed First Amendment Article III standing requirements similarly apply here."); Dkt. 27-1 at 3 n.1 (Pulbrook Order) (finding "First Amendment cases . . . provide the most analogous authority" for Yelp Law claim).[2]

"Because constitutional challenges based on the First Amendment present unique standing considerations, plaintiffs may establish an injury in fact without first suffering a direct injury from the challenged restriction." Lopez v. Candaele, 630 F.3d 775, 785 (9th

---

[2] Plaintiffs request that the Court take judicial notice of three unpublished federal district court orders. Dkts. 27, 32. UPS has not opposed. The Court takes judicial notice of the decisions in Pulbrook, Maldonado, and O'Donnell. See Fed. R. Evid. 201(b) (A court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

6

Cir. 2010) (cleaned up).  But "[e]ven in the First Amendment context, a plaintiff must show a credible threat of enforcement."  Italian Colors Rest. v. Becerra, 878 F.3d 1165, 1171 (9th Cir. 2018).  In determining whether Plaintiffs face a credible threat of enforcement, the Court considers three factors: (1) the likelihood that UPS will enforce the Terms against Plaintiffs; (2) whether Plaintiffs have shown, "with some degree of concrete detail," that they intend to violate the Terms; and (3) whether the Terms even apply to Plaintiffs.  Id. at 1171-72.  "The touchstone for determining injury in fact" remains "whether the plaintiff has suffered an injury or threat of injury that is credible, not 'imaginary or speculative.'"  Lopez, 630 F.3d at 786 (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).

Plaintiffs analogize their facts to O'Donnell, Maldonado, and Pulbrook, three recent district court opinions that found Yelp Law claims brought on similar allegations did not support subject matter jurisdiction due to an insufficient showing of any concrete injury.  See Dkt. 31 at 6-8 (Reply).  The Court finds the analysis in those opinions to be persuasive, as well as in Sweeney, which reached the same result.  See Sweeney, 2024 U.S. Dist. LEXIS 129148, at 14-15.

Even applying "the relaxed standing requirements for a claim involving speech rights," the O'Donnell court found that plaintiffs' Yelp Law claims, which were based on terms of service governing the defendant company's website, failed to establish injury in fact because the operative complaint "d[id] not contain (1) any allegations that Plaintiffs violated or intended to violate the Terms, (2) any allegations that Plaintiffs [were] self-censoring in fear of violating the Terms, or (3) any allegations that Defendant sought to enforce the Terms."  O'Donnell, 2024 WL 3834704, at *4; see also Sweeney, 2024 U.S. Dist. LEXIS 129148, at *13-14; Maldonado Order at 5; Pulbrook Order at 3-4.

Here, Plaintiffs contend that the Terms forbid them, as well as "any California consumers, or potential California consumers, who have visited or used the Website, or are even considering purchasing services or products from UPS through its Website, from making any

7

statements that would purportedly 'negatively reflect on the goodwill or reputation' of UPS itself, any of its partners, any of its employees, any of its agents, or any of its goods or services." FAC ¶ 27. Plaintiffs also allege that UPS "threaten[s] to penalize users for making any statements that it considers to 'negatively reflect on the goodwill or reputation of UPS'" because the Terms provide that UPS may "terminate or suspend [a consumer's account] at any time and for any or no reason in its sole discretion . . . ." Id. ¶ 26. Plaintiffs allege that UPS has, through its Terms, "engaged in an intentional business strategy to silence" any person who visits its website. Id. ¶ 24.

These allegations are not sufficient to establish that Plaintiffs have "suffered an injury or threat of injury that is credible," rather than merely "imaginary or speculative." Lopez, 630 F.3d at 786 (quoting Babbitt, 442 U.S. at 298). Plaintiffs allege only that UPS has the aim of silencing consumers; they "do not allege they were silenced or stifled" themselves. Pulbrook Order at 4. The FAC contains no allegations "that Plaintiffs, or [any] member of the proposed class, have made any statements about [UPS] or its goods and services. Nor does it include any allegations that Plaintiffs intended to but were forced to self-censor or modify their behavior to avoid enforcement of the . . . Terms." Sweeney, 2024 U.S. Dist. LEXIS 129148, at *13-14. "[T]here are no factual allegations that [UPS] has previously enforced or plans to enforce" the Terms to censor Plaintiffs or any other person. Id. at *14. Indeed, UPS argues in its motion to dismiss that the Terms "only govern ups.com, and Plaintiffs still do not allege that ups.com contains any space or forum for public comment by website visitors." Dkt. 24 at 11 (citations omitted).

Plaintiffs' allegations do not satisfy the constitutional minimum injury in fact required to establish Article III standing.

### 2. Injuries Caused by Statutory Violations

The Supreme Court has explained that "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" TransUnion, 594 U.S. at 425

8

(quoting Spokeo, 578 U.S. at 341). Even so, the role of Congress "in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, 578 U.S. at 341. "In determining whether an intangible injury is sufficiently concrete, 'both history and the judgment of Congress play important roles.'" Eichenberger, 876 F.3d at 982 (quoting Spokeo, 578 U.S. at 340).

UPS argues, citing Eichenberger, that an alleged violation of the Yelp Law confers standing without further allegation of harm because the Yelp Law protects against infringement of speech, which "is itself a concrete injury." Opp'n at 11 (citing Eichenberger, 876 F.3d at 984). But UPS's broad interpretation oversimplifies Eichenberger.

In Eichenberger, the Ninth Circuit found that an alleged violation of the Video Privacy Protection Act (VPPA) is sufficient to establish standing without any further allegations of harm. Eichenberger, 876 F.3d at 983-84. The circuit distinguished the VPPA from § 1681e(b) of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681e(b), which was the central provision at issue in Spokeo. Id. at 982-83. In "requir[ing] consumer reporting agencies to take 'reasonable procedures to assure maximum possible accuracy' of the information they report[,]" § 1681e(b) "concerned *procedural* violations of the FCRA that would not invariably injure a concrete interest." Id. at 982 (citing Spokeo, 578 U.S. at 1114). By contrast, the VPPA, which prohibits a video tape service provider from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[,] . . . protects generally a consumer's substantive privacy interest in his or her video-viewing history." Id. at 983. "[B]oth the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." Id. (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 763 (1989)). Consistent with that understanding, the substantive right to privacy identified by the VPPA "suffers *any*

9

*time* a video service provider discloses otherwise private information." Id. at 983-84.  As with privacy torts, which do not always require additional harm beyond the intrusion itself to be actionable, a plaintiff alleging a violation of the VPPA "need not allege any further harm to have standing."  Id.

The Ninth Circuit's reasoning in Van Patten is also instructive. There the circuit concluded that a violation of the Telephone Consumer Protection Act (TCPA) "is a concrete, *de facto* injury."  Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017).  The circuit analogized TCPA actions to actions to remedy an invasion of privacy, intrusion upon seclusion, or nuisance, which "have long been heard by American courts," and saw the TCPA as protecting "the right of privacy, which is recognized by most states."  Id.  Because "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients[,]" a plaintiff alleging a TCPA violation has always alleged a concrete injury to establish standing.  Id.

In essence, an alleged violation of the VPPA or the TCPA confers standing without an additional showing of harm because any violation of those laws causes an intangible harm "with a close relationship to [privacy-related] harms traditionally recognized as providing a basis for lawsuits in American Courts."  TransUnion, 594 U.S. at 425.  The same is not true for an alleged violation of the Yelp Law.

As the Court previously explained, "[a]n individual or entity can violate [the Yelp Law] simply by including a non-disparagement clause in a contract or proposed contract for the sale or lease of consumer goods or services."  Ord. at 6 (citing Cal. Civ. Code § 1670.8(a)(1)).  The Yelp Law "does not require . . . an alleg[ation] of threat or penalty in order to state a claim."  Id.  It is a well-settled principle of standing that although plaintiffs challenging a restriction on freedom of speech "may establish an injury in fact without first suffering a direct injury from the challenged restriction[,]" Lopez, 630 F.3d at 785, "[e]ven in the First Amendment context, a plaintiff must show a credible threat of enforcement." Becerra, 878 F.3d at 1171.  Because a person or entity

10

can violate the Yelp Law even where there is no allegation of injury or credible threat of enforcement, a Yelp Law violation, standing alone, does not cause an injury "with a close relationship to [speech-related] harms traditionally recognized as providing a basis for lawsuits in American Courts." TransUnion, 594 U.S. at 425.

Merely alleging a violation of the Yelp Law, without any allegations of further harm does not establish a concrete injury in fact. Because that is precisely what Plaintiffs have done in the FAC, they do not have standing here.

### 3.   Economic Injuries

UPS argues that Plaintiffs have "allege[d] an economic injury—the 'quintessential injury-in-fact'—by expressly alleging that they are entitled to damages and restitution." Opp'n at 6 (quoting Harden v. Air Prods. W. Coast Hydrogen LLC, 2022 WL 1115830, at *5 (C.D. Cal. Apr. 14, 2022)). The Court disagrees with UPS's expansive interpretation of the allegations in the FAC.

UPS quotes Harden for the proposition that "[a]n allegation of an economic injury automatically counts as an allegation of injury in fact." Opp'n at 6 (quoting Harden v. Air Prods. W. Coast Hydrogen LLC, 2022 WL 1115830, at *5 (C.D. Cal. Apr. 14, 2022)). As Plaintiffs note, see Reply at 4, Harden relied solely on Maya in reaching the conclusion that the plaintiff's allegations, which "expressly [sought] 'monetary damages' and restitution'" as well as "'actual,' 'compensatory,' and 'punitive' damages" were sufficient to "imply she suffered an actual economic injury" that "automatically" establishes injury in fact. Harden, 2022 WL 1115830 at *5 (citing Maya v. Centex Corp., 658 F.3d 1060, 1069 (9th Cir. 2011)).

In Maya, the Ninth Circuit considered what it described as "a narrow question": did the plaintiff home buyers have standing to sue the defendant developers "for injuries allegedly caused by the developers' practice of marketing neighboring homes to individuals who presented a high risk of foreclosure and abandonment of their homes, financing those high-risk buyers, concealing that information, and

11

misrepresenting the character of the neighborhoods." <u>Maya</u>, 658 F.3d at 1064-65.  The plaintiffs alleged that, "as a result of defendants' actions, they paid more for their homes than the homes were worth at the time of sale" and "they would not have purchased their homes had defendants made the disclosures allegedly required by law." <u>Id.</u> at 1069.  The circuit explained that plaintiffs' allegations that they "spent money that, absent defendants' actions, they would not have spent . . . is a quintessential injury-in-fact." <u>Id.</u>  The plaintiffs also alleged that "defendants' acts caused their homes to lose value" and that they experienced decreased quality of life "because the blight resulting from defendants' lending practices ma[de] their homes less desirable places to live." <u>Id.</u> at 1071.  "Both reduction in value to one's property (even if one has not attempted to sell the property) and decreased quality of life are concrete injuries." <u>Id.</u> at 1072.

Unlike the plaintiff home buyers in <u>Maya</u>, Plaintiffs here fail to allege any "actual and concrete economic injuries." <u>Id.</u> at 1069.  In arguing to the contrary, UPS points only to allegations seeking damages and restitution. <u>See</u> Opp'n at 7.  UPS contends that Plaintiffs' allegations that they seek and are entitled to restitution amounts to an allegation "that the UPS Defendants improperly took money or property from them and that they are entitled to its return" because that is the meaning of the word restitution.  <u>Id.</u> ("'Restitution' means 'the return of money or other property obtained through an improper means to the person from whom the property was taken.'") (quoting <u>Clark v. Superior Ct.</u>, 50 Cal. 4th 605, 614 (2010)).  UPS also argues that Plaintiffs allege economic injury because their request for relief includes "damages" rather than only civil penalties.  <u>See id.</u> (citing Plaintiff's request for "civil penalties, damages, [and] restitution" to argue that "Plaintiffs seek monetary damages, separate from and above civil penalties, for their alleged injuries").  Without more, these allegations do not amount to an allegation of economic injury sufficient to confer Article III standing.

The mere fact that the FAC contains a generic request for restitution and damages, rather than exclusively requesting civil penalties is not enough to establish a concrete injury in fact.  UPS's

12

argument to the contrary "essentially reduces the injury-in-fact requirement to a mere exercise in reciting magic words." O'Donnell, 2024 WL 3834704 at *4. The FAC contains no factual allegations to support the conclusion that Plaintiffs suffered "actual and concrete economic injuries." Maya, 658 F.3d at 1069. "At best, Plaintiffs have plausibly alleged that they used [UPS's] website, that their use of that website bound them to its Terms, and that those Terms contained provisions prohibited by" the Yelp Law. O'Donnell, 2024 WL 3834704 at *4.

Because Plaintiffs have not alleged that they "suffered an injury that is concrete, particularized, and actual or imminent[,] . . . there is no case or controversy for [the Court] to resolve" and this action falls outside the "confines [of] the federal judicial power" under Article III of the Constitution. TransUnion, 594 U.S. at 423. In the absence of standing, remand is mandatory. See Polo, 833 F.3d at 1196.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Remand is GRANTED.

IT IS SO ORDERED.

Date: October 15, 2024

Dale S. Fischer
United States District Judge

13